## STATE ex rel. MILLER, et ux. v. CITY OF LEESBURG.

Circuit Court, Lake County.

August 8, 1950.

C. Rodger Wells and W. F. Robinson, both of Leesburg, for relators.

Walter Warren, Leesburg, for respondent.

T. G. FUTCH, Circuit Judge.

In 1949 the legislature "defined" the limits of the city of Leesburg so as to add approximately 2,000 acres of area to the territory already under the jurisdiction of the city.

Relators own approximately 30 acres of the territory so added and instituted quo warranto proceedings challenging the constitutionality of the legislative act. The sole ground urged as doing violence to the constitution is that said lands will not receive any benefit by reason of their inclusion in the city by reason of remoteness.

In State v. Busbee (Fla.), 43 So. 2d 711, involving the extended corporate limits of the town of Groveland, I held that the lands sought to be excluded by the action received as much benefit as any other property within the town. For that reason I refused to oust the newly added lands, and the Supreme Court sustained the judgment on appeal.

The Groveland case is similar to this case in one respect at least — the territory in each case has been added on all four sides so as to form practically a square area with all four sides practically straight. That case differs from the case at bar in that in that case all, or practically all, of the owners of the newly incorporated land joined in the action as relators through the Attorney General, whereas in the instant case only the two owners of one comparatively small parcel of land complain of the municipal jurisdiction.

Thus the court in the Groveland case was given a thorough description of all the newly added territory while in this case the testimony is confined largely to the land of the relators and land immediately in the vicinity thereof.

Perhaps counsel for both sides unconsciously depended on my knowledge of the territory involved and thus failed to produce proofs which they would otherwise have produced before one not so well acquainted with the subject matter. I do not understand, however, that I am permitted to resort to my own knowledge of local conditions in arriving at a decision.

A number of photographs were introduced to show business institutions on 14th street — relators' property is located at the extreme north end of 14th street. The photographs added little to the record except to demonstrate that practically every one who owned a corner lot on a well-travelled road or street wanted at least one filling station. Most of the substantial business places shown by these photographs are more than a mile south of relators' property. The four corners of 14th street and Main are each adorned with a filling station equipped with emptying facilities. The photographer happened to go out armed with both still and moving cameras on the day the city had presumed to scrape an unpaved road on the north side of relators' property and took pictures of the scraping procedure — this road is of no consequence, as it starts at 14th street and appears from the testimony to peter out a short distance west of there, at the first pine stump that it could conveniently wrap itself around and quit.

So it is that the court is given only an over-the-shoulder glance at the newly acquired territory to the west and a backside glance of part of the land to the east of relators' property. The broad expanse of territory on the east side of town, together with a small bite on the west of town, and a liberal

slice on the south, are not directed to the court's attention by the record made — except for a slight description of part of that on the south.

If the act is void as to part of the territory annexed by the city then it is bad as to all of it. The courts are not authorized to make boundary lines for municipalities; for instance, see State v. City of Largo (Fla.), 149 So. 420; except in those cases where natural boundaries can be adopted, State v. City of Stuart (Fla.), 120 So. 335; nor do I believe such an act as the one here being attacked should be struck down on a complaint by one ownership of a small part of the territory annexed — unless the act is clearly an invasion of the property rights incident to such ownership.

On relators' property the record shows a substantial hotel and a large garage building both in active operation. These businesses are essentially urban in nature. The record shows that this property does not need water service by the city for business purposes because of an ample supply of water available from a well and pump on the property. The hotel and garage enjoy electric and garbage service from the city as well as police and fire protection. That the electric service and fire protection were available before annexation makes them no less municipal services.

A new road leading from directly in front of this property across the northern section of the city to connect with state highway 441 somewhat east of the east city limits has through the efforts of the city been budgeted for construction by the state road department. The city has acquired right-of-way for this road through the city at city expense. That it is to be built otherwise than at city expense makes it no less a municipal benefit as it will make a shorter and more direct connection from this property to the business center of the city and will deliver a large volume of north-bound traffic directly to and by relators' properties. It is evidence of alertness on the part of city officials to provide additional conveniences, benefits and services for the inhabitants of the city.

The Supreme Court of Florida in State v. City of Oakland Park, 42 So. 2d 270, observes that — "The Legislature is without power to create a municipality out of sunshine, bathing beaches, custard apple swamps and low lands that have no potential value for any purpose until expenditures are made to fill and drain them."

We have no question of "custard apple swamps and low lands or bathing beaches" in this record. The court takes judicial notice that we have sunshine involved, as is to be found anywhere. The same Court, however, speaking through the same justice, Justice Terrell, in a later case, Van Allen v. Town of Ocean Ridge, 46 So. 2d 452, said — "The question for determination is whether or not the lands that petitioners propose to exclude are benefited by reason of the fact that they are within the corporate limits of the town of Ocean Ridge" — and enumerates the services received, which are practically the same as those received by relators' land in this case.

Had relators' parcel of land been the only parcel annexed, it could not in my opinion be freed from the jurisdiction of the city on the facts as shown by the record. The owners of the remaining land amounting to more than 1,000 acres are not complaining in this action, and the record is not such that any other lands can be considered in this proceeding.

I am of the opinion that the writ should be quashed, and order and judgment will be entered accordingly.