WALDEN, Chief Judge.
Three property owners sued to obtain the removal of their lands from within the corporate limits of the Defendant-Town of Malabar. A final decree of ouster was entered. The Town of Malabar appeals. We reverse.
As support for ouster, the chancellor found, inter alia:
“3. That the lands owned by the rela-tors herein are wild, unimproved, raw, undeveloped lands and that there are no permanent improvements of any kind located on said property, except that said lands have three residences located thereon which were constructed prior to the time said land was included in the Town of Malabar.
* *
“5. That the Town of Malabar has offered no services to said property and is not benefitting or improving said property in any way, and in fact said property in its present condition is not susceptible to municipal conveniences and benefits without expenditures of divers sums of money to develop said property.
“6. That said lands are far removed from conveniences and advantages of city life and are isolated from the built-up portions of said town and is not needed for future expansion of said town at the *44 present time and, in fact, same could not be used for industrialization or residential areas without spending great sums of money.
“ * * *
“8. That the facilities and services made available to all inhabitants of Malabar are not needed by said property owned by the relators and in fact none of said services could be used by said property in its present condition.”
There is no real dispute as to the material facts. We note that the land in question constituted 100 acres with Appellee-Nelson owning 99 acres and with Appellees-Hurt and Tripp each owning acre.
The Nelson property is bounded on the east by the Indian River, on the north by the residence of Appellee-Hurt, on the west by an orange grove and on the south by the south town limits. It is improved by a large colonial style two-story single family dwelling located at its north end. The Hurt and Tripp property consists of two single family dwellings, each located on a landscaped acre homesite lying immediately north of the Nelson property. Two paved roads traverse the property sought to be ousted, one being Rocky Point Drive which runs parallel and along the Indian River, and the other being U. S. Highway #1, a four-laned traffic artery divided by a 20-foot median strip. Additionally, the west portion of the Nelson property is traversed by the double trackage of the Florida East Coast Railway.
The Town of Malabar was incorporated in December, 1963, and its corporate area comprises about 9,000 acres. On January 1, 1965, it had a cash balance of $4,700.00 and no bonded indebtedness, compared to a cash balance of zero at the time of its incorporation.
The overwhelming majority of the town’s land is vacant and unimproved. There are two areas of development, one being along U. S. Highway #1 in a north-south direction, and the other being along Malabar Road in an east-west direction. There are various single family dwellings along Rocky Point Drive starting immediately north of the property sought to be ousted and continuing north along the west bank of the Indian River.
The property owners’ complaint alleged that their land was (a) rural, (b) isolated from benefits, (c) not susceptible now or in the future to municipal benefits and (d) subject to taxation without benefits. The town’s answer denied these material allegations.
The record reveals that no ad valorem taxes are presently being levied and that none were planned for the future. Available for all land and land owners were the services provided by the town of a building inspector, electrical inspector, plumbing inspector, town marshal, zoning board and fire department. The land in question has also received the benefit of zoning promulgated by the town. The property on the north of appellees’ property had been used for keeping pigs, chickens and goats. Other residents in the area had thrown garbage on their premises causing an unsightly condition and a health hazard. The town had zoned this area commercial and residential and thereby eliminated the mentioned objectionable conditions. It was undisputed that the fire department had responded to a fire call in the immediate vicinity of the Nelson property five weeks prior to trial and that the town had erected street signs in and about the appellees’ property within the past twelve months. It further appeared that the town planned to construct a recreation and civic center for the use and benefit of its inhabitants within the-near future. The town had recently constructed a new fire house. Finally, the land in question is high in elevation and suitable for residential purposes.
Appellees’ position is based on a line of cases which hold that, where no benefits have been received from the city or where there is a total absence of municipal benefits, and n'o prospects of benefits in the future,, the property should be ousted or excluded;., *45 Town of Satellite Beach v. State ex rel. Gleason Brothers and Company, Fla.App.1960, 122 So.2d 39; State ex rel. Ervin v. City of Oakland Park, Fla.1949, 42 So.2d 270; City of Auburndale v. State ex rel. Landis, 1938, 135 Fla. 172, 184 So. 787; State ex rel. Landis v. Town of Boynton Beach, 1937, 129 Fla. 528, 177 So. 327; State ex rel. Landis v. Town of Boca Raton, 1937, 129 Fla. 673, 177 So. 293.
The town bases its position on four cases which present the rule that, when it is shown that the land sought to he ousted received some benefits from the town commensurate with the benefits received by other land in the municipal limits, ouster should not be granted. Town of Medley v. McCahill, Fla.App.1964, 164 So.2d 541; Klemm v. City of Winter Haven, Fla.App.1959, 114 So.2d 11; Van Allen v. Town of Ocean Ridge, Fla.1950, 46 So.2d 452; and State ex rel. Watson v. Busbee, Fla.1949, 43 So.2d 711.
Looking more exactly into the applicable judicial pronouncements, the Supreme Court, in the case of State ex rel. Watson v. Busbee, supra, stated that, in a quo war-ranto action seeking ouster, where there is a showing that lands sought to be excluded are rural and not susceptible to municipal benefits commensurate with other property located within the town, the lands will be excluded. The court there found, however, that the lower cortrt was correct in ruling that, where there is substantial evidence that the lands sought to be ousted received as much benefit as any other property within the town of Groveland, ouster should not be granted. The benefits there consisted of an ample supply of pure water, a measure of fire protection, small town police and sanitary regulations and service.
In the case of Van Allen v. Town of Ocean Ridge, supra, an action pursuant to F.S. Sec. 171.02, F.S.A., the Supreme Court distinguished earlier cases in which it was conclusively shown that the lands in question received no benefits whatever from the city facilities and that they were devoid of any prospect of receiving any. The court pointed out that in the Ocean Ridge case the lands in question received benefits in the way of street improvements, water, police protection, fire protection, garbage and trash disposal, and had good prospects of receiving other benefits.
The Second District Court of Appeal, in the case of Klemm v. City of Winter Haven, •supra, cited both the Busbee case and the Town of Ocean Ridge case. The Klemm case involved a suit to enjoin collection of taxes on the lands in question on the ground that the lands received no benefits. In affirming the lower court’s judgment in favor of the city the appellate court stated that:
“ * * * It is apparent that tendering and rendering of municipal services and benefits by the City of Winter Haven in respect to appellants’ land are commensurate with the services tendered and rendered to the land of others within the corporate limits of said city. The appellants have failed to carry the burden of showing that they are without benefits and are devoid of any prospect of receiving any.”
The final case relied on by the town was Town of Medley v. McCahill, supra, in which owners of low, swampy land located in the middle of town brought a petition under F.S. Sec. 171.02, F.S.A., to have the land excluded. The lower court granted the exclusion, but the Third District Court of Appeal reversed, stating that:
“ * * * Where, as here, the land is of the same nature and character as most of the land in the town, it cannot be reasonably maintained that it is so devoid of any prospect of receiving benefit from city facilities that it must be excluded.”
It is manifest from the record that the land in question qualifies for municipal inclusion regardless of which case or line of cases is considered and applied. The land by undisputed testimony received benefits worthy of cognizance in the past, and there were substantial prospects of benefits in the future. Further, the appellees’ land was *46 of the same nature as most of the other land located in the town and did indeed, by the test of the authorities just mentioned, receive benefits commensurate with the benefits received by the other land in town.
The appealed decree of ouster is hereby
Reversed.
PIERCE, WILLIAM C., and WHITE, JOSEPH S., Associate Judges, concur.