STATE, *ex rel.* CARY D. LANDIS, as Attorney General, WARD B. MILLER, *et ux.,* and WARD B. MILLER, INC., v. TOWN OF BOYNTON BEACH.

177 So. 327.
Division A.
Opinion Filed July 19, 1937.
Rehearing Denied December 16, 1937.

*Edwin T. Osteen, Julian R. Bullock, Jos. S. White* and *McIlvaine & Milam,* for Plaintiffs in Error;

*Metcalf & Finch,* for Defendant in Error.

TERRELL, J.—The Town of Boynton was created by Chapter 8918, Acts of 1921. In December, 1929, the plaintiffs in error as corelators filed an information in the nature of quo warranto challenging the jurisdiction of the said town over lands owned by them and included therein. In 1931, the Legislature enacted Chapter 15088, creating the Town of Boynton Beach, from those lands in the Town of Boynton lying east of the Florida East Coast Canal including the lands of the corelators described in the information.

In November, 1934, an amended information in the nature of quo warranto was filed whereby the corelators secured an

order substituting the Town of Boynton Beach in lieu of the Town of Boynton as party defendant. An answer to the information was filed and trial resulted in an instructed verdict for the defendant. A final judgment was entered and the instant writ of error was prosecuted.

The trial court instructed a verdict for the defendant on the theory that corelators were estopped by *laches* to challenge the jurisdiction of the Town of Boynton Beach over their lands as described in the information and predicated his judgment squarely on State, *ex rel.* Landis, *et al.,* v. City of Coral Gables, 120 Fla. 492, 163 So. 308. This holding presents the only question with which we are now concerned.

In the case last cited and relied on by the trial court, the judgment of this Court was predicated on the fact that the boundaries of the City of Coral Gables were extended by Acts of the Legislature to include corelators' lands. After being so extended, bonds were issued on the credit of the city, extensive municipal improvements were made which corelators witnessed and acquiesced in for six or eight years before challenging the city's authority and some benefits were estopped to raise the question.

The record here discloses that the Town of Boynton Beach as created by Chapter 15088, Acts of 1931, is a strip of land three miles long and one-half mile wide lying between the East Coast Canal and the Atlantic Ocean and was formerly a part of the Town of Boynton. It embraces about nine hundred acres, one-third of which is covered by the waters of Lake Worth. It has eleven homes and its population is less than forty. The lands of corelators have at all times been used for cow pasture and dairy; they are in the extreme southern part of the town; they are adapted only for agricultural purposes; they are remote from any

city improvements, are wild and unimproved; are more than a mile from any highway maintained by the town; they enjoy no benefits from being included in the town; no improvements have been placed anywhere near them by the town nor any in contemplation; it is more than one mile from the closest fire hydrant; no water service, police protection, sewerage disposal, sanitary protection, and no electric light service is furnished by the town; there is no telephone service and less than five per cent. of the expenditure with which the Town of Boynton Beach was burdened was spent within its limits and that was spent more than one and a half miles from the corelators' lands. The chancellor found that "the property (of corelators) is situated at such a distance that it is beyond any municipal benefits and receives no benefits at all."

Prior to the creation of the Town of Boynton Beach, the Town of Boynton had issued and expended more than one million dollars in bonds for municipal improvements. In distributing the indebtedness of the Town of Boynton as thus created, fifty per cent. or $566,000, was allocated to the Town of Boynton Beach.

The power of the Legislature to create, abolish, and change the boundaries of municipalities as conferred by Section Eight of Article Eight of the Constitution, while sometimes said to be absolute, is nevertheless limited by the requirement that the elements which necessitate or make desirable the creation of a municipal corporation must be present. There must be a basis for additional governmental facilities; otherwise that provided by the State and County is ample.

The elements essential to constitute a municipal corporation comprehend an area of contiguous territory sufficiently populated and industrialized to make it necessary

or desirable that it be incorporated into a municipality in order that additional and better governmental services such as police protection, sanitary improvement, lights, water, electricity, sewerage disposal, paved streets, and other municipal conveniences be provided. Such services may be furnished by the municipality or by private parties under contract with the municipality.

Until a proposed municipality has attained this status or some appreciable degree of it, there is no predicate for incorporating it as such. The area incorporated must be suited for municipal purposes and must bear a just proportion to the population included. The test of what lands should be embraced in the municipality is determined by the benefits that may be returned to it and when these are absent, there is no theory on which it can be included. State, *ex rel.* Davis, v. City of Lake Placid, 109 Fla. 419, 147 So. 468; State, *ex rel.* Davis, v. City of Largo, 110 Fla. 21, 149 So. 420.

To incorporate an area into a municipality that is not susceptible of development along the lines and for the purposes here outlined or to bring considerable areas of wild and unimproved lands into a municipality already created for revenue purposes only or that cannot be furnished municipal benefits in proportion to the tax imposed is but little short of criminal and cannot be sustained. Benefits are not always susceptible of admeasurement in dollars and cents. They may be present or remote, tangible or intangible such as appeal only to the aestheic sense, but they must be present.

To incorporate an area such as we have here, three miles long and one-half mile wide, one-third of which is under water, with a maximum of eleven homes and less than forty people and saddle on it a debt of more than one-half million

dollars, less than five per cent. of which was spent in the affected area is one of the most flagrant abuses of legislative power that has been brought to our attention. It exhibits a total disregard of the rights of those affected, and imposes a burden that has no relation whatever to the benefits furnished anywhere in the municipality.

The material facts involved in this litigation are not in dispute. They are admitted by the answer to the information. The defendant in error relies entirely on estoppel by conduct which we hold is not shown as to either the Town of Boynton or the Town of Boynton Beach. Even if there had been a basis for the creation of the latter, the lands involved should be eliminated on authority of Town of Boynton v. State, *ex rel.* Davis, 103 Fla. 1113, 138 So. 639.

There is some confusion as to the circumstances under which estoppel by *laches* may be invoked to block the path of relators in cases of this kind. It is settled that each case must stand or fall on its own facts. In the following cases this question has been treated and in some of them we held that delay was fatal in stated periods while in others we refused to do so. Town of Ormond v. Shaw, 50 Fla. 445, 39 So. 108; State, *ex rel.* Davis, v. City of Stuart, 97 Fla. 69, 120 So. 335; State, *ex rel.* Landis, v. City of Auburndale, 121 Fla. 336, 163 So. 698; State, *ex rel.* Attorney General, v. City of Fort Lauderdale, 102 Fla. 1019, 136 So. 889; Town of Boynton v. State, *ex rel.* Davis, 103 Fla. 1113, 138 So. 639; State, *ex rel.* Davis, v. City of Clearwater, 106 Fla. 761, 139 So. 377, on rehearing 108 Fla. 635, 146 So. 836; State, *ex rel.* the Attorney General, v. City of Avon Park, 108 Fla. 641, 149 So. 409; State, *ex rel.* Davis, v. City of Largo, 110 Fla. 21, 149 So. 420; State, *ex rel.* Davis, v. City of Pompano, 113 Fla. 246, 151 So.

485; City of Winter Park v. State, *ex rel.* Attorney General, 119 Fla. 343, 161 So. 386.

A careful reading of these cases discloses that in those instances when the Legislature has palpably abused its prerogative by incorporating lands in a municipality totally devoid of the elements essential thereto, the Act is void *ab initio* as to such lands and may be moved against at any time. In those cases where the benefits were remote or prospective but the incorporation was encouraged and acquiesced in for a period of years, relief has been denied, especially when obligations have been undertaken on the strength of the new territory. Equity always looks with suspicion on long delays and except in extreme cases, exacts that all those seeking relief at its hands act promptly.

The judgment below is reversed.

Reversed.

ELLIS, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in the opinion and judgment.

BROWN, J., dissents.

## ON PETITION FOR REHEARING.

PER. CURIAM.—The opinion filed herein has been examined in the light of the petition for rehearing. It was the intention of the Court to limit the opinion to the question of whether or not the lands of plaintiff in error, Miller, should be eliminated from the Town of Boynton Beach. We find nothing in the original opinion that is suceptible of any other interpretation. Neither does the petition for rehearing point out in what respect it may be construed as all inclusive.

We have examined the cases cited in briefs of counsel and had them in mind when the opinion was written. We have reviewed the whole matter again but under the facts

presented, we can reach no other conclusion. We find no bases whatever for applying the doctrine of estoppel or *res adjudicata*. As we said in our former opinion, municipal benefits is the only theory on which lands can be included in a municipality. If Miller submitted and paid his taxes for a period of years and then decides to withdraw because no benefits were in sight, the municipality has gained that much and Miller has been the loser. It would be the grossest kind of oppression and injustice to refuse the relief prayed for in this case. Section Four, Declaration of Rights.

Rehearing is accordingly denied and our former opinion reaffirmed on rehearing.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring).—I dissented from the original opinion in this case mainly upon the ground of estoppel by acquiescence for a considerable period of time, and also because of some things that were said in the opinion of this Court in Town of Boynton Beach v. State, 108 Fla. 92, 145 So. 858, and the legal effect of that decision, but on rehearing I have resolved my doubts in those respects to such an extent as to yield to the views of the majority to the effect that the original decision herein should be adhered to.