The Town of Boynton was created by Chapter 8918, Special Acts of 1921. It issued bonds to refund outstanding bonds for water works, streets and other public improvements. The legislature of 1931 enacted Chapter 15088, Special Laws of Florida, creating the Town of Boynton Beach from a portion of the area embraced in the Town of Boynton. The latter Act required the Town of Boynton Beach to assume fifty per cent of the indebtedness of the Town of Boynton as of the first day of April 1930, amounting to $594,700.
In May 1933, the Town of Boynton Beach made an agreement with the creditors of the Town of Boynton by which the latter would accept refunding bonds from the Town of Boynton Beach in settlement of their claim against said Town imposed by Chapter 15088. Pursuant to said agreement the Town of Boynton Beach authorized the issuance of bonds which were approved by a vote of the freeholders as required by Section 6, Article IX of the Constitution, F.S.A. The said bonds were validated by decree of the Circuit Court, which was affirmed by this Court in State v. Town of Boynton Beach, 116 Fla. 534, 156 So. 539. The name of the Town of Boynton Beach was changed to the Town of Ocean Ridge by Chapter 18730, Special Acts of 1937. Taxes have been consistently imposed on the lands of appellants and other lands within the Town to service said bonds.
In October 1946, appellants as taxpayers instituted this suit by bill in equity which was later amended and the bond holders made parties defendant, seeking to restrain the Town of Ocean Ridge from imposing and collecting past due, present or future taxes on their lands, to service said bonds. Prayer for relief is based on the theory that Section one of Chapter 15088, Special Acts of 1931, is unconstitutional, because: (1) The most of the money received for the bonds was spent in the Town of Boynton, and very little of it was spent in the Town of Ocean Ridge, though one-half the burden was imposed on the latter. (2) The population and acreage was smaller in the Town of Ocean Ridge than it was in the Town of Boynton. (3) *Page 458 
Portions of the Town of Ocean Ridge have been excluded from the Town, materially reducing its ability to meet its obligations. (4) The lands of the plaintiffs are improved and are in the heart of the Town but the benefits received by them are not commensurate with the taxes imposed. (5) Defendant bondholders are not holders in due course. A motion to dismiss, challenging the sufficiency of the amended bill, was granted and the complainants appealed.
The first question presented turns on whether or not there is equity in the amended bill of complaint.
Appellants first contend that the chancellor committed error in dismissing the amended bill of complaint, because: (1) The area embraced in the Town of Ocean Ridge is not a community of people susceptible of being created into a municipal corporation as required by law, and (2) The lands embraced in the Town of Ocean Ridge were remote, wild, unoccupied, unimproved, not susceptible of municipal benefits, and being so, the legislature was without power to create a municipality from such lands. The following cases are relied on to support this contention: Town of Boynton v. State, 103 Fla. 1113, 138 So. 639; Humphreys v. State,108 Fla. 92, 145 So. 858; State v. Town of Boynton Beach, 116 Fla. 534, 156 So. 539 and State ex rel. Landis et al. v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327.
The amended bill of complaint alleges that the bonds in question were purchased at a discount of eighty per cent, that very little of the town was fit for habitation, and that it had been materially reduced in area by court decrees in exclusion suits. The non-municipal character of the lands in the Town of Ocean Ridge is also alleged, including other geographical facts and conditions which they say contributed to the unenforcibility of the bonds. It is charged that these facts and the fact that appellants' lands (25 acres) now bear the major burden, were apparent to defendants when they purchased the bonds.
These considerations entered the picture after the litigation discussed in this opinion accrued. We think they present issues not heretofore considered. If proven and shown to have been the cause of the alleged low sale of the bonds, it would be grossly inequitable to impose the proposed burden on appellants' lands. It is inconceivable that 25 acres of raw and only partially developed beach lands be saddled with a tax burden of more than one-half million dollars. It would amount to confiscation and might support the contention that defendants were not bona fide purchasers.
If the allegations of the amended bill are proven it would seem evident that appellants' lands are not such as are susceptible to municipal benefits and should not have been brought into the municipality. If this premise be true then there is no theory under which they can be taxed for general municipal purposes. Whether or not this rule applies to taxes imposed for debt purposes depends on the proof as to time factors, the purpose for which the indebtedness was used, including other pertinent facts that are alleged and may be proven.
From the record it appears that the lands in question are no more heavily populated than they were when the town was originally created. This court has repeatedly held that lands not susceptible to municipal benefits should not be brought into a municipality and if brought in contrary to this thesis, they may be eliminated. See dissenting opinion of Mr. Justice Barns in Town of Ocean Ridge et al. v. Certain Lands et al., 159 Fla. 880,33 So.2d 596, where many of these cases are collected and the principle approved. We think there was equity in the amended bill and that it was error to dismiss it.
The only other question we deem necessary to treat is whether or not appellees are holders of the bonds in due course.
It is alleged that the bonds were twelve years in default when purchased, that they were purchased at an inordinately reduced price and that these and other infirmities were known to appellees when they purchased. The fact that the bonds were purchased at a discount and bore past due coupons, rendering them in default, would not always affect the bona fides of the *Page 459 
purchase, but if appellants can prove the alleged default and the discount they claim, we do not think the bonds were purchased in good faith. For these reasons I think the judgment should be reversed.
CHAPMAN and HOBSON, JJ., concur.